UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Reyes Carrasco Valladares,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | No. 1:24-cv-00913-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF**<br><br>**(Doc 11, 15)** |

**I.     Introduction**

Plaintiff Reyes Carrasco Valladares appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act.[1]

**II.     Factual and Procedural Background**

On August 4, 2021, Plaintiff applied for disability insurance benefits. The agency denied the application initially and on reconsideration. The ALJ held a hearing on October 17, 2023. AR 54–76. The ALJ issued an unfavorable decision on December 1, 2023. AR 17–40. The Appeals Council denied review on July 2, 2024 (AR 1-9) and this appeal followed.

**III.     The Disability Standard**

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits. Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof.

---
[1] The parties consented to the jurisdiction of a United States Magistrate Judge. Docs. 7, 8.

1

*Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 9, 2021. AR 26. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine; vertigo; anxiety; and depression. *Id.*

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26–28.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> the claimant is frequently able to climb ramps and stairs, and is never able to climb ladders, ropes and scaffolds. The claimant is frequently able to balance, crawl, crouch, kneel and stoop and should not work in environments exposing him to unprotected heights or machinery with dangerous, moving mechanical parts. The claimant is able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks

AR 28–34.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as a floor/wall applier, floor technician/carpenter due to the very heavy exertional level required. AR 34. At step five, in reliance on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: small parts assembler; production assembler; and router clerk. AR 35. Accordingly, the ALJ concluded that Plaintiff was not disabled since the alleged disability onset date of January 9, 2021. AR 36.

### V. Issues Presented

Plaintiff asserts the following claims of error: that the ALJ failed to properly evaluate his testimony regarding mental and physical dysfunction, and failed to properly evaluate the medical opinions of Drs. Torres and Soriano concerning the same.

### A. Mental RFC

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### 1. Plaintiff's Testimony

##### a. Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### b.   Analysis

Plaintiff began experiencing dizziness and neurological abnormalities following a situation at his job in 2017 where he was required to use acetone cleaner in a confined space with no ventilation.  AR 62–63.  He was unable to work after this incident.

Plaintiff emphasizes his testimony that this incident gave rise to a variety of other symptoms and mental limitations including: concentration deficits, crying episodes, anxiety, social isolation, difficulty speaking with other people, difficulty following directions, difficulty handling stress, and difficulty handling changes in routine.  MSJ at 7 (citing AR 67-69, 298, 302-304, 350-351).

As to the objective evidence, Plaintiff highlights three abnormalities that were consistently noted in the record which he contends corroborate his alleged mental symptoms and limitations: 1- anxious and depressed mood; 2- impaired insight and judgment[2]; and 3- highly circumstantial thought process focused on his medical problems.  MSJ at 8 (citing AR 43, 45, 48, 51, 649-650, 666-667, 671, 676-677, 683, 686, 689, 639, 697).

Relevantly, the ALJ cited numerous normal examination findings (AR 31–32) which Plaintiff contends was merely a generalized summary of medical evidence that was insufficiently specific to meet the Ninth Circuit's clear and convincing reasoning standard.  MSJ at 8–9.  In addition, Plaintiff disputes Defendant's related discussion as an impermissible post-hac

---

[2] As will be explained below, judgment was not impaired.

5

rationalization of the ALJ's decision, one which was supported by citations the ALJ did not cite.

Plaintiff's argument here is not entirely persuasive as all agree that the vast majority of the mental health treatment records during the relevant period are found in the Fresno County Behavioral Health records dated November 25, 2020 through May 11, 2022—located at Exhibit 7F, 10F, and 11F (AR 649–52; 666-698)—which show largely unremarkable findings. The ALJ cited and described their contents extensively though Defendant perhaps presented them in a more persuasive manner and cited to some specific pages which the ALJ did not.

Importantly, the examination findings reflected in those exhibits did not significantly vary and are the same exhibits Plaintiff cites as demonstrating depressed and anxious mood, impaired insight and judgment[3], and a highly circumstantial thought process. MSJ at 8 (citing AR 43, 45, 48, 51, 649-650, 666-667, 671, 676-677, 683, 686, 689, 639, 697). As such, they are well within the purview of judicial review even if the ALJ did not pin cite each page or exhaustively list each finding therein.

In addition, no inferential leaps were required to ascertain, as the ALJ alluded to, that the Plaintiff's presentation was consistently normal save for the findings Plaintiff emphasized: anxious/depressed mood, limited insight, and circumstantial thought process.

The normal findings included: cooperative behavior, no abnormal motor activity, normal cognition, intact concentration,[4] normal speech, normal orientation, and organized thought process[5] (649-650, 666-667, 671, 676-677, 683, 686, 689, 639, 697). In sum, Plaintiff is not correct that the

---

[3] To be more exact, only insight was impaired. "Insight and judgment" was 1 category for which the clinician checked the box corresponding to "impaired," but in the narrative comments immediately below the check box the clinician stated "limited insight and fair judgment." *See, e.g.,* AR 650, 667, 674.

[4] Which is highly relevant to Plaintiff's subjective perception that he struggles with concentration.

[5] Which is also highly relevant as the full description of thought process was "logical, coherent, highly circumstantial and focused on vague, mostly somatic symptoms." This reflects the provider's assessment that Plaintiff's overall thought process was organized, logical, and coherent despite the focus on somatic symptoms. Moreover, this is not a post-hoc rationalization of the ALJ's decision, but rather a rebuttal to Plaintiff's argument that circumstantial thought process was an abnormality the ALJ overlooked or minimized when in fact the records do not reflect an overall abnormal thought process.

record reflected impaired judgment, or that a highly circumstantial thought process was indicative of overall abnormal thought content, especially given that the provider characterized the thought process as logical and coherent despite the circumstantial focus on somatic symptoms. The remaining abnormalities of limited insight and anxious/depressed mood are significantly outweighed by the normal findings as noted above.

The ALJ also found that the record demonstrates Plaintiff was "noncompliant with medications including not starting [duloxetine] or gabapentin and never taking mirtazapine," which Defendant also emphasizes. Defendant is correct that an unexplained or inadequately explained failure to seek or follow a treatment regimen may be the basis for an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

However, as to Plaintiff not starting gabapentin or duloxetine, and never taking mirtazapine, that notation appears in Plaintiff's chart as of June 2018 and December 2018---long before the January 2021 alleged onset date---and was carried over to each follow up visit thereafter. See, e.g. AR 650. Another chart note indicates that Plaintiff refused Gabapentin as of May 2020, which is also before the relevant period. AR 626. An additional chart note indicates that Gabapentin was discontinued "by other MD" as of December 2020. AR 604. Another chart note indicates it was unclear if Plaintiff was or was not taking it. AR 649. Importantly, this does not establish non-compliance with gabapentin, mirtazapine, or duloxetine.

The ALJ also noted another instance of non-compliance with prescribed Compazine during an encounter dated February 25, 2022. AR 666. Plaintiff responds that the provider also noted that Plaintiff was taking Clonazepam (Tr. 666), he was responding to this medication, and other medications had been ineffective or intolerable or both over the course of several years (Tr. 667). Reply at 3. Ineffectiveness and intolerability of the medication is arguably an adequate reason not to take it. Even if not, this appears to be an isolated incident which does not suggest a pattern of

treatment non-compliance.

Plaintiff also disputes the ALJ's finding that his symptoms improved with treatment. Plaintiff contends the medical evidence did not show that he experienced any significant or material improvement in his mental symptoms that warranted a rejection of his testimony, rather "Treatment notes reflected consistent and ongoing mental symptoms for which Plaintiff regularly followed up with a psychiatrist and took medications (Depakote and Clonazepam)." However, the ALJ noted that on March 5, 2021, Plaintiff reported his "episodes [of dizziness] have decreased and intensity has improved significantly." AR 683. On this point, progress notes dated February 25, 2022, indicate anxiety and depression scores of 5/10 (AR 666) in contrast to scores of 6, 7, and 8/10 from earlier exams dated March 2, 2021 (AR 685), March 5, 2021 (AR 676) and June 8, 2021 (AR 682).

Plaintiff further contends that "the mere fact that Plaintiff received some marginal benefit from medications did not show that his mental functioning improved to the level that he could return to full-time gainful work activity." MSJ at 10. But a 2–3-point improvement on a 10-point scale in Plaintiff's self-reported depression and anxiety severity is more than a marginal benefit. Secondly, the ALJ need not establish Plaintiff's ability to return to full time work in order to satisfy the clear and convincing reasoning standard for discounting his allegations. *See* Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

In sum, the ALJ's overall reasoning was clear and convincing in consideration of: 1- the largely normal mental status examination findings discussed above—i.e. normal in every respect except anxious/depressed mood, limited insight, and circumstantial (but otherwise normal) thought

process—and, 2- significant improvement in his symptoms and self-reported depression and anxiety scores.

Although the ALJ's discussion was not a model of clarity, the ALJ's reasoning was sufficiently clear and convincing to establish that the ALJ did not "arbitrarily discredit" Plaintiff's testimony about his alleged mental health symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

### 2. Dr. Torres' Opinion

#### a. Applicable Law

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

#### b. Analysis

Plaintiff explains as follows:

In September 2023, Plaintiff's psychiatrist, Ann Marie Torres, M.D., completed a mental disorder questionnaire (Tr. 836-837). Dr. Torres noted that Plaintiff had diagnoses of anxiety and depressive disorders, as well as rule out panic disorder and rule out somatic symptom disorder (Tr. 836). Dr. Torres opined that Plaintiff had concentration and isolation problems that would impair his ability to work <u>but would not entirely preclude his ability to perform full-time work</u> (Tr. 836). Dr. Torres further opined that Plaintiff's mental illness impaired his ability to adapt to stresses common to a normal work environment, and he had dizziness and nausea when he had to be around people outside his home or he had to change his routine in any way (Tr. 837).

9

> …
> Here, the ALJ found that Dr. Torres' opinion was generally persuasive (Tr. 34). Specifically, <u>the ALJ indicted that he was crediting Dr. Torres' finding regarding stressful environments and incorporating that finding into Plaintiff's residual functional capacity</u> (RFC) (Tr. 34). <u>Yet, ultimately, the ALJ formulated an RFC that failed to accommodate Dr. Torres' assessment that mental illness impaired Plaintiff's ability to adapt to stresses common to a normal work environment, and he had dizziness and nausea when he had to be around people outside his home or he had to change his routine in any way</u> (Tr. 837). While the ALJ limited Plaintiff to work involving simple, routine tasks, merely restricting the complexity of work did not ensure that the work would not involve significant stress and workplace changes.

MSJ at 12, 14 (emphasis added).

Thus, Plaintiff contends that, despite Dr. Torres opining that Plaintiff's mental limitations were not work preclusive, the ALJ nevertheless found the opinion generally persuasive and expressed an intention to incorporate the limitations identified therein. However, Plaintiff argues that the ALJ nevertheless failed to do so because the RFC limitation to "simple, routine" tasks did not account for Plaintiff's low tolerance for stress and changes in routine. Plaintiff contends that task complexity is a distinct concept from stress tolerance and changes in routine.

To the contrary, "district courts throughout the Circuit have [] concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks." *Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (collecting cases).

Plaintiff cites non-controlling caselaw which he contends establishes the opposite. Even so, the view expressed by this court in *Henry* and the cases cited therein are more persuasive. Task complexity and stress tolerance are certainly correlated, and it is difficult to argue otherwise. Generally speaking, complex tasks are more stressful than simple tasks. As to Plaintiff's low tolerance for changes in routine, the RFC for "routine" tasks plainly accounts for that. The most natural interpretation of that word in this context suggests a static routine, not a changing routine.

Finally, with respect to Dr. Torres' statement that Plaintiff experiences dizziness and nausea

when he is around others, that is not a medical opinion but rather a symptom. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(a)(2). Even assuming Dr. Torres was expressing an opinion that Plaintiff does in fact experience dizziness and nausea as symptoms of social anxiety, Dr. Torres did not take the next step of explaining what impact those symptoms have on Plaintiff's ability to interact with others in the workplace. From this it would be difficult to conclude that Dr. Torres believed that Plaintiff had no ability to interact with other individuals for any amount of time.

In sum, Plaintiff establishes no error in the ALJ's treatment or consideration of Dr. Torres' opinion.

### B.   Physical RFC

#### 1.   Dr. Rachna Soriano

On June 3, 2020, Dr. Soriano completed medical interrogatories describing Plaintiff's physical functionality. AR 383–88. Plaintiff contends the ALJ did not evaluate or consider the opinion. Indeed, the ALJ did not.

However, as Defendant emphasizes, the form Dr. Soriano completed stated it applied from "April 1, 2018 through current," and listed the alleged onset date as May 17, 2017, which applied to a prior disability claim. The onset date for the current claim, by contrast, is January 9, 2021. AR 26. Thus, Dr. Soriano's opinion does not apply to the period under review, and Plaintiff does not argue otherwise.

#### 2.   Plaintiff's Testimony About Physical Dysfunction

Plaintiff again discusses his dizziness and other somatic manifestations of his anxiety. The discussion is duplicative of his argument about his subjective mental complaints including: 1) that his complaints were consistently corroborated in the record, 2) that the ALJ relied on a generalized summary of evidence rather than specific findings, and 3) that his symptoms only improved

somewhat with Clonazepam but still were a substantial barrier to his ability to work. MSJ at 10–12. Here, Plaintiff breaks no new ground in explaining the ALJ's alleged errors in evaluating his physical manifestations of anxiety.

Plaintiff also discusses his lumbar spine impairment. At the hearing Plaintiff explained the impediments to his ability to work, but his spinal impairment was not one of them. Plaintiff testified that he used to lift up to 100 pounds as a floor installer which he performed until 2017 when there was an incident while he was cleaning with acetone in a room with no ventilation. AR 62-63. At that point he states that he began experiencing dizziness, palpitations, tongue numbness, nausea, and blurry vision. AR 66. When asked <u>what else</u> prevents him from engaging in activities he did not mention back pain, radicular pain, muscle spasms, range of motion difficulties, weight lifting limitations or related symptoms. *Id.*

Plaintiff emphasizes that imaging studies in 2020 and 2022 showed that Plaintiff had multi-level disc bulging and protrusions with annular fissures and abutment (possible impingement) of the traversing L5 nerve roots, central canal stenosis, and marked mass effect on the thecal sac of the spinal cord. AR 414, 732. Plaintiff acknowledges that his back impairment did improve for a period of time, but he re-aggravated his back in 2022-2023[6] and an MRI showed comparably similar severe pathology as the prior MRIs. AR 732, 787.

Although these MRI reports do seem to describe severe pathology, including marked central canal stenosis, the physical examination evidence was not consistently abnormal during the relevant period.

Plaintiff contends that the most recent physical examinations showed that he had spasms and tenderness to his paravertebral muscles (Tr. 877), positive straight leg-raise testing (Tr. 877),

---

[6] In his factual summary Plaintiff cited a July 2023 visit indicating the exacerbation occurred one year earlier when bending over. MSJ at 4 (citing AR 787).

an antalgic gait, significantly reduced lumbar spine range of motion, decreased weightbearing on the right lower extremity, and reduced hip strength (Tr. 787-788).

Notably, Plaintiff's two cited visits show opposite findings in several respects. The first visit Plaintiff cites is dated <u>June</u> 14, 2023, which noted, as Plaintiff emphasizes, spasm and tenderness in his paravertebral muscles and <u>positive</u> straight leg raise, AR 877. However, the second visit dated <u>July</u> 20, 2023, showed <u>negative</u> straight leg raise. AR 788.

Plaintiff points that the <u>July</u> 2023 visit noted several <u>gait abnormalities</u>—including antalgic gait and reduced weight bearing on the right,—<u>significantly reduced lumbar ROM</u> (20 degrees of flexion), and reduced hip strength. AR 787–88. The June 2023 visit, by contrast, showed <u>normal gait</u> and <u>normal lumbar ROM</u> (up to 90 degrees of flexion), though no strength testing was noted. AR 877.

Further, as the ALJ noted, the June 2023 visit states as follows:

> Patient had appt with Dr. Daniels Ortho on 5/26/23. Per patient he gave provider his CD of MRI and was determined to get Steroid Injections <u>but since patient was not having pain it was determined that no injections were needed</u>. states he has been feeling better. Patient has not gotten MRI scheduled yet he is concerned because he had one done about 1 year ago. which showed spinal stenosis and other disc displacement in lumbar region. Patient states he has noticed <u>his back pain has decreased but has intermittent right leg pain.</u>
> AR 31, 807, 876 (emphasis added)

Plaintiff's contention that his back symptoms regressed after his 2022 re-injury is undermined by the significantly contrasting findings between the June 2023 and July 2023 visits, specifically: 1-the notation from the June 2023 visit that no injections were needed because he was not having pain, and 2- the subsequent statement that he had decreased back pain and only intermittent right leg pain.[7] As to the period prior to the alleged re-aggravation in mid-2022,

---

[7] The ALJ stated that Plaintiff reported in February and May of 2023 that he was feeling better and therefore "did <u>not</u> need back surgery." AR 31, 812, 832 (emphasis added). The record actually states "Patient currently seeing Neurosurgeon, states he has been feeling better. He states he <u>does need</u> back surgery he is just waiting to get scheduled." *Id.* Nevertheless, his statement that he <u>does</u> need surgery is not a useful indicator of his pain or limitation.

13

Plaintiff does not provide an argument about what that evidence demonstrates or why the ALJ's findings concerning same are insufficient.

In sum, Plaintiff identifies no error in the ALJ's treatment of the records concerning Plaintiff's physical impairments.

**VI.     Conclusion & Order**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

2. Defendant's cross motion (Doc. 15) is **GRANTED.**

3. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **April 16, 2025**                             /s/ Gary S. Austin
                                                                    UNITED STATES MAGISTRATE JUDGE